# Elliott's Appeal.

A testatrix, by her will, devised a part of her plantation to her son, and another part to her three daughters, and authorized her son, whom she appointed her executor, with the consent of her three daughters to sell the plantation if he thought proper.   He sold the whole tract, with the assent of the daughters, for a certain price per acre.   *Held,* that the devisees were entitled to the purchase money in the proportions measured by the quantity of land devised to each, without regard to value as to quality.

APPEAL by David Elliott from the decree of the Orphans' Court of *Cumberland* county.

David Elliott, executor of Mary Elliott, deceased, and Martha

III. — 57                2 N *

Elliott, deceased, filed his accounts for settlement the 19th of January 1841. In the account of Mary Elliott's estate, he charged himself with two-thirds of the price of 106 acres of land, at $15 per acre, viz., $1060; and in the account of Martha Elliott he charged the one-third of that price, viz., $530. These accounts came before the court for confirmation, and the following exception to the account of the estate of Mary Elliott was filed.

Accountant should be charged with two-thirds of $2862, being the price of 106 acres of land at $27 per acre, $1908.

The court referred the subject to an auditor to ascertain the facts, who made the following report:

Mary Elliott made her will, which was proved the 26th of June 1821, by which she bequeathed to her three daughters, Margaret Elliott, Martha Elliott, and Sarah Elliott intermarried with Cadwallader Jones, 106 acres of land, to be divided off the north end of her tract of land in North Middleton township, and the remainder of said tract, containing 148 acres 76 perches, to her son David Elliott. She further willed, that if her executors and her heirs can agree, and they think it most to their advantage to sell the land bequeathed to them, then she empowers her executors, or the survivor of them, to make a sufficient deed of conveyance to the purchaser; and by her will allows her two daughters, Margaret and Martha, to live with their brother David Elliott while they remain single, and have their boarding and clothing as usual, and David is to have the land clear of rent until sold. David, Margaret, and Martha lived together on the land until the death of Martha, about ten years ago. And since then Margaret resided with David, till the land was sold in February 1840. The north end of the tract, that is the 106 acres devised to Margaret, Martha, and Sarah, is not so valuable as the 148 acres, 76 perches devised to David, the difference in their relative value being $10 per acre; that is, David's part is worth $10 per acre more than that of his sisters, supposing a sale of the whole tract to be made at $27 per acre. The timber on David's land has been nearly all cut off, while on the 106 acres enough remained to supply a farm of 254 acres. David has cut off and sold to the Railroad Company from the 106 acres some sills and rails which brought $64, and after paying for cutting and hauling netted him $32. Margaret agreed to this timber being cut.

On the 22d of February 1840, David Elliott, by an article of agreement, covenanted to convey to Samuel Zeigler his and his sisters' land, to wit, the whole tract of 254 acres 76 perches, for the sum of $27 for each and every acre of said tract, neat measure; the deed, clear of all encumbrances, to be made on or before the 1st of April then next. Afterwards David procured from his sisters Margaret and Sarah, and Cadwallader Jones, their agreement to join with him in executing a deed to Zeigler on or before the 1st of April 1840, agreeably to the terms and provisions of the

[Elliott's Appeal.]

article of agreement between David Elliott and Samuel Zeigler. A deed by all the parties was executed in pursuance of this agreement. It is contended on behalf of David Elliott, that he is only to account for the relative value of the 106 acres of land to the whole tract sold, the sale of the whole having been made at $27 per acre. If this position be correct, the 106 acres are worth $21.16, amounting to $2242.96, two-thirds of which, $1495.04, would be the sum to be charged in D. Elliott's account as executor of Mary Elliott. On the other hand, if he is to account for the land at the price it brought per acre, to wit, $27, then the 106 acres would amount to $2862, and the two-thirds with which he is chargeable to $1908.

When the account came before the court on the report of the auditor, the court made the following decree:

"And now, to wit, 11th of May 1841, the within account being presented to the court upon the report of the auditor, the court order and decree the accountant to be charged with two-thirds of $2862, being the price of 106 acres of land at $27 per acre, and that the two-thirds of the two-thirds of the expenses of the audit be credited to accountant in this account, and the account being thus corrected, it is confirmed. And the court decree that accountant pay to the parties in interest, the sums to which they are respectively entitled, upon their filing releases for all claims under the will of David Elliott, sen'r, deceased."

The court made a similar decree in in the case of the estate of Martha Elliott, deceased, charging accountant with one-third of $2862, the price of 106 acres of land at $27 per acre, and crediting him with the one-third of the two-thirds of the expenses of the audit. From these decrees David Elliott appealed.

Error assigned:

The court erred in directing the accountant to be charged in his accounts with $2862 as the value of 106 acres of land, contrary to the report of the auditor. Accountant ought only to be charged with $2242.96, the value of the 106 acres of land, agreeably to the auditor's report.

*Graham* and *Watts,* for appellants. The fact is distinctly found, and is not the subject of controversy, that the respective parts of the land devised to the son and the daughters are of unequal value. The parties themselves did not contract on the subject of what part of the purchase money each was to receive; and there is no more fairness in adopting the number of acres to which each was entitled, as the measure of division, than there is in adopting the value of each acre. The land has been sold by virtue of the powers contained in the will; the executor is to be charged with the purchase money, as a trustee, and the matter is now before a court of chancery, to be decided upon principles of equity, the basis of which is, that each devisee shall receive the bounty intended for her by the will of the testator. The Master,

to whom the subject has been referred, has found and reported the true value of the devise to each; and by that report the appellant agrees to abide.

*Alexander*, for appellee. When the executor entered into the agreement to sell at a specific price per acre, he asks the assent of the devisees to the agreement which he had made. This is tantamount to an agreement on his part, that they shall receive the price per acre there stipulated for their land. He is thereby estopped from any inquiry into the relative value of the different parts. 7 *Serg. & Rawle* 63; 17 *Serg. & Rawle* 365. But there was a mutual advantage imparted by each part to the other, which should be computed as adding to the united value of both.

The opinion of the Court was delivered by

ROGERS, J.—The testatrix, Mary Elliott, having devised certain real estate to her son, David Elliott, and an adjoining tract of woodland to her daughters, Margaret, Martha, and Sarah intermarried with Cadwallader Jones, empowers her executors, if they and the heirs can agree, and they think it most to their advantage, to sell the said land, and make a sufficient deed of conveyance to the purchaser. Without any previous consultation, so far as appears, the surviving executor entered into an agreement for the sale of the whole tract, including the 106 acres devised as aforesaid, with a proviso that the other parties in interest should join in the conveyance. In consideration thereof, the purchaser covenants to pay the vendor $27 *for each and every acre,* neat measure, the same to be surveyed by a competent surveyor, chosen by the parties before the execution of the deed. They further agree as to the time and manner of paying the purchase money. The devisees, Margaret and Sarah, and Cadwallader Jones her husband, Martha being dead, assent to the sale in the following words: "We, Margaret Elliott, and Cadwallader Jones, and Sarah Jones, wife of the said Cadwallader, hereby assent and agree to the within and foregoing article of agreement, and all the covenants and provisions therein mentioned; and we do covenant and agree to join in executing a deed, on or before the 1st day of April next, with David Elliott to Samuel Zeigler, agreeably to the terms and conditions of said article of agreement."

The property, it must be observed, is sold by the acre, and the purchaser agrees to pay, instead of a sum in gross, $27 *for each and every acre,* without any discrimination whatever as to its value, arising either from situation or quality, or taking into consideration whether the same is arable, meadow, or woodland. With the agreement before them, (for their assent is endorsed on the article), the appellees consent to the sale for the price stipulated, and bind themselves to perform all and singular the covenants and provisions therein mentioned. And in consideration

thereof, they agree to join in executing a deed, agreeably to its terms and conditions. Unless otherwise informed by the vendor, in whom they would naturally place the utmost confidence, they were warranted in believing that for each and every acre of land they held, they were entitled, by the express terms of the contract, to the sum of $27. And if another construction was intended to be given to the agreement, it was the duty of David to explain it to them fully; for who can say that, if they had been informed in time of the version which is now attempted to be given to the contract, they would have assented to the sale. The vendor cannot complain, if we hold him to a course of conduct in accordance with good faith and fair dealing. It was his duty to have stated to them explicitly, that as his part was the most valuable, he should expect to be paid out of the purchase money, in proportion to its value. We cannot fairly suppose that the price per acre, (as is sometimes the case), was merely a mode of ascertaining the aggregate amount of the purchase money. It would rather appear, (and this, we think, is the most reasonable view of the transaction), that the agreement was made to assume that form in order that, in a settlement between the parties, they might know with reasonable certainty what each was entitled to receive. If the appellees had been aware of the construction of the contract now attempted, they might, and probably would have refused to confirm the contract. 1st, Because of the inadequacy of the price; and 2dly, even that price was uncertain, requiring, as it must, a subsequent valuation of the respective shares, so as to adjust their relative value. This effect is so natural, that we are not to suppose that they would be uninfluenced by it, unless there was some proof that they knew precisely the situation in which they were placed.

The testatrix seems to have had an eye to the sale of the land as one tract, under the belief, no doubt, that it would enhance the value; and it is very likely that this reason operated on the vendors and the vendee. For we can readily understand that the value of a tract destitute of wood, is much increased by joining to it a tract chiefly valuable on account of its timber, and *vice versâ*. They will usually, as is well known, command a much greater price than if sold in separate parcels. The property was used by the testatrix as one tract, and the improvements, of course, would be made with a view to its being one farm, which would be an additional reason for selling it together. If this be so, David has lost nothing. On the contrary, he has effected a sale of his own portion, for a price greater than otherwise could have been obtained for it. And as, therefore, the sale was mutually beneficial, the appellant is deprived of all just cause of complaint.

Decree affirmed, with costs.